IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| LM INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>DUBUQUE BARGE AND FLEETING SERVICE COMPANY d/b/a NEWT MARINE SERVICE,<br><br>Defendant. | No. 17-CV-1035-MAR<br><br>**RULING ON MOTIONS FOR SUMMARY JUDGMENT** |

_____

## *I. INTRODUCTION*

This matter is before the Court on (1) Plaintiff LM's motion for summary judgment (Doc. 21) and (2) Defendant Newt Marine's motion for summary judgment (Doc. 20). Each party has filed a resistance to the other's motion. (Docs. 22, 23.) Each party has filed a reply brief in support of its own motion. (Docs. 24, 25.) The Court held oral arguments February 25, 2019. The matter is fully submitted.

Plaintiff Liberty Mutual Insurance Corporation ("LM") commenced this action by filing a complaint on December 20, 2017. (Doc. 1.) LM's Complaint asserts that Defendant Dubuque Barge and Fleeting Service Company d/b/a Newt Marine Services ("Newt Marine") breached the parties' contract to provide workers' compensation insurance because Newt Marine failed to pay workers' compensation insurance premiums. The dispute concerns whether Newt Marine is required to pay premiums for employees who are classified as seamen under the Jones Act.

1

Pursuant to the scheduling order and discovery plan of March 30, 2018 (Doc. 12), the parties unanimously consented to disposition by a United States Magistrate Judge, and the case was subsequently reassigned to me. *See* 28 U.S.C. Section 636(c)(3).

## II. SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or "when 'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248)). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable or is not significantly probative," *Anderson*, 477 U.S. at 249-50 (internal citation omitted), does not make an issue of material fact genuine. Put another way, "'[e]vidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The parties "may not merely point to unsupported self-serving

allegations." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (citation omitted).

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249 (quotations omitted). The party moving for entry of summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. *Id.* at 910-11. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, the court must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, because the court views "the facts in the light most favorable to the nonmoving party, [the court does] not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

On cross motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright et al*., Federal Practice and Procedure* § 2720 (3d ed. 1998). When the parties seek summary judgment on some of the same issues, the court may consider all the parties' arguments as to each issue, keeping in mind the separate inferences that are to be drawn from each motion. *See Wright v. Keokuk Cty. Health Ctr.*, 399 F. Supp. 2d 938, 946 (S.D. Iowa 2005). In the instant case, virtually all of the relevant facts are not in dispute. Where an objection is raised to any statement of a material fact, the dispute, for the most part, concerns the legal effect of a certain fact or facts – not about the facts themselves.

## III. RELEVANT FACTS

Newt Marine, an Iowa Corporation, is engaged in marine construction work, mostly conducted on a floating plant and dredge barge with a tug boat. LM is a corporation that sells, among other things, workers' compensation insurance of the type that Iowa employers are required to maintain. This case involves workers' compensation insurance policies issued by LM to Newt Marine.

At the time the policies were issued, LM was a servicing carrier who issued workers' compensation insurance through Iowa's state-administered assigned risk plan. *See* Iowa Code § 515A.15. As LM describes it, employers who cannot obtain workers' compensation insurance on the voluntary market apply for insurance through Iowa's assigned risk plan. A participating insurer is then randomly assigned and issues the policy to the employer. (Doc. 21-1 at 2.) There is no opportunity to investigate or engage in underwriting prior to issuing the policy. The insurer issues the policy based solely on information supplied by the employer and an estimated premium deposit. However, the

employer is subject to audit by the insurer to determine the actual premium owed based on the risk actually undertaken:

> The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and the work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance.

(Doc. 21-3 at 28 (Policy, Pt. Five ¶ E).) The policy further permits LM to charge a premium "for all other persons engaged in work that could make us liable." (*Id.* at 27 ¶ C2.)

LM issued Newt Marine three workers' compensation policies between May 4, 2013 and February 1, 2016 as part of Iowa's assigned risk plan. The policies gave LM the right to examine and audit Newt Marine's records relating to the policies and determine the final premium after the policy period. The final premium is determined

> after [each] policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by [each] policy. If the final premium is more than the premium [the insured] paid to [LM], [the insured] must pay [LM] the balance.

(Doc. 23-1 ¶ 5.) Each policy further provided that "[i]nformation developed by audit will be used to determine final premium," and that LM can charge a premium. (Doc. 21-3 at 28 (Policy, Pt. Five ¶ G).)

Each policy expressly excluded from coverage: "[b]odily injury to a master or member of the crew of any vessel." (Doc. 20-4 at 35 (Policy, Pt. Two ¶ C10).) Masters or members of any crew of any vessel, otherwise known as "seamen," are covered under a separate protection and indemnity policy maintained by Newt Marine with AIG.

Newt Marine contends that all of its deckhands, operators, pilots, and boat engineers were excluded from the LM policies because they were classified by Newt

5

Marine as seamen. (Doc. 22-1 ¶ 7.) In response, LM asserts that those individuals "were supposed to be excluded from the policy however [Newt Marine] still submitted claims on these individuals to LM Insurance, claims which LM Insurance paid on." (*Id.*) Three injuries to Newt Marine employees were reported to LM. These employees were classified as seamen and employed as "operators," but asserted workers' compensation claims and received benefits under the Iowa Workers' Compensation Statute.[1] LM conducted audits in 2013, 2014, and 2015 to calculate final premiums. The audits specifically excluded the three seamen who were compensated under the Iowa workers' compensation statute and all of whom were identified as "operators." At all material times, deckhands, operators, pilots, and boat engineers employed by Newt Marine were masters or members of a vessel excluded from coverage under each of the LM policies at issue and were subject to the Jones Act based on their duties and responsibilities. LM performed an audit following the end of the policies and decided to assess a total additional premium of $1,290,927.58, plus interest. (Doc. 21-2 ¶ 14.) This amount was determined by charging a premium for the seamen who were excluded under the policies. In fact, the only relief LM requests is damages for unpaid premiums for "all other persons engaged in work that could make us liable." (Doc. 1 ¶¶ 22, 36, 37, 51, 52.) Plaintiff LM's Complaint does not state any claim to recover amounts it paid in claims for employees that should have been excluded under the policies.

## IV. ANALYSIS

### A. *The alleged breach of contract.*

The Iowa Supreme Court has explained the elements of a breach of contract action:

> To prevail on a breach of contract claim, [the claimant] [i]s required to prove: (1) the existence of a contract, (2) the terms and conditions of the contract, (3) that [the claimant] has performed all the terms and conditions

---

[1]LM clarified at oral argument that it ultimately paid the claims for these workers and was not reimbursed by Newt Marine or AIG.

required under the contract, (4) the [opposing party's] breach of the contract in some particular way, and (5) that [the claimant] has suffered damages as a result of [the opposing party's] breach.

*Royal Indem. Co. v. Factory Mut. Ins. Co.,* 786 N.W.2d 839, 846 (Iowa 2010) (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.,* 578 N.W.2d 222, 224 (Iowa 1998)); *see also Hagen v. Siouxland Obstetrics & Genecology, P.C.,* 934 F. Supp. 2d 1026, 1053 (N.D. Iowa 2013) (citing *Royal Indem.*, 786 N.W.2d at 846, for the elements of a breach of contract claim under Iowa law); *Nationwide Agribusiness Ins. Co. v. SMA Elevator Constr., Inc.,* 816 F. Supp. 2d 631, 688 (N.D. Iowa 2011) (citing *Molo Oil Co.,* 578 N.W.2d at 224, for the same elements).

Of these elements, the existence of a breach and the concomitant damages remain in dispute. It is undisputed that three insurance policies were issued and are binding contracts. The terms and conditions of those contracts are apparent. The only issues for resolution are (1) whether Newt Marine's refusal to pay premiums to LM relating to certain employees constitutes a breach and, if so, (2) what damages is LM entitled to recover.

### B. *"Seamen" under the Iowa Workers' Compensation statute and the Jones Act.*

Iowa law requires employers to maintain workers' compensation insurance on their employees. Iowa Code § 85. One exception to this requirement is relevant to this case. Iowa Code § 85.1(6) prohibits an employer from assuming liability for any employee "with respect to whom a rule of liability or method of compensation is established by the Congress of the United States." The Jones Act establishes such a rule of liability of method or compensation:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer.

> Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C. § 30104. The Iowa Supreme Court has read Iowa Code § 85.1(6) and this provision of the Jones Act to deprive the Iowa Workers' Compensation Commission of subject matter jurisdiction over such claims. Therefore, a seaman cannot recover Iowa workers' compensation benefits. *Harvey's Casino v. Isenhour*, 724 N.W.2d 705. 708-09 (Iowa 2006). Because of this restriction, employers obtain separate coverage for claims that may arise from injuries to seamen, as Newt Marine did with AIG.

The term "seaman" is not defined by the Jones Act, but is determined by the employee's duties and connection to a vessel in navigation. *Id.* at 707 (citing *Chandris, Inc v. Latsis*, 515 U.S. 347, 368 (1995)). An employee will generally not qualify as a seaman under the Jones Act if he spends "less than about 30 percent of his time in the service of a vessel in navigation." *Chandris*, 515 U.S. at 371.

C.   *LM's payment of claims to excluded seamen.*

In this case, both parties agree that LM paid claims that it was not obligated to pay under the policy language because the injured employees were seamen and thus excluded. It is not entirely clear why LM paid claims relating to employees excluded from its policies. LM argues that it had a duty to pay the claims "based on the information provided by the insured or risk a bad faith claim." (Doc. 22 (citing *Boylan v. American Motorist Ins. Co.,* 489 N.W.2d 742, 744 (Iowa 1992)). Other than its reliance on the assertions by Newt that the claims should be covered by the LM workers' compensation policy, LM does not explain why it paid claims of employees who were unequivocally listed as seamen by Newt Marine, as well as on its own audits.

Newt Marine's argument does not provide much more explanation regarding why employees classified as seamen were compensated under the LM workers' compensation policy. It does appear that the duties of those workers may have changed during the

course of their employment—or at least that was the position that Newt Marine's manager took. (Doc. 22 at 2-3; Doc. 21-3 at 7-8 (Holtrup Dep.).)

At oral argument, LM's counsel stated that the seamen's classification was not litigated in the course of the workers' compensation claims. Iowa workers' compensation law provides a mechanism whereby the issue of coverage can be determined in the course of a claim. In fact, *Harvey's Casino v. Isenhour* arose when the injured employees sought workers' compensation benefits and the employers successfully asserted that the employees' status as seamen removed the case from the Workers' Compensation Commission's subject matter jurisdiction. 724 N.W.2d 705, 709 (Iowa 2006); *see also, Bluff Harbor Marina, Inc. v. Wunnenberg*, 801 N.W.2d 627, 2011 WL 2041833, at **1, 3 (Iowa Ct. App., May 25, 2011) (issue arose when surviving spouse applied for death benefits with Iowa Workers' Compensation Board; court held that because deceased husband was not an employee covered under federal Longshore and Harbor Workers' Compensation Act, Iowa Code § 85.1(6) did not deprive Workers' Compensation Commissioner of subject matter jurisdiction).

Thus, LM could have, but did not, challenge the status of the seamen in the course of the workers' compensation claims and it does not seek to recover the amounts it paid on claims that were excluded under the policy. LM does not offer a satisfactory explanation for its decision to pay the workers' compensation claims for three employees classified as seamen despite the policy exclusion. LM states that refusing to pay the benefits claims for could have subjected it to bad faith claims. Newt Marine points out that there is nothing to prevent LM from raising the policy exclusion to any claim by an injured seaman. Ultimately, LM has not shown there is a genuine issue of disputed fact regarding whether it was prevented from contesting the seamen's status or that it was somehow estopped from asserting the exclusion for seamen in subsequent cases.

### D.   The "could make us liable" clause.

Rather than seek to recover amounts paid for claims it did not owe or seek premiums for the three employees who were improperly classified, LM takes the position that it is entitled to premiums on all excluded seamen employed by Newt Marine. LM relies on the policy language in "PART FIVE—PREMIUM" paragraph C(2) ("Section C2") as the basis for its potential liability and for charging a premium to Newt Marine. Section C2 provides:

> C. Remuneration
>
> Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:
> 1. all your officers and employees engaged in work covered by this policy; and
> 2. *all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy*. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

(Doc. 21-3 at 28 (Policy, Pt. Five ¶ C) (italics added).) LM's argument regarding this provision is as follows:

> Given the nature of the NCCI[2] procedure, LM Insurance was not able to classify [Newt Marine] employees themselves, but instead relied on the information provided to them by [Newt Marine]. As a result, LM Insurance faced exposure for employees that were not originally known to be covered under LM Insurance policies and not properly reflected in the premium.
>
> [T]he three individuals that filed claims, Abitz, Jackson and Cawthorn, create an exposure under the could-make-us-liable

---

[2] NCCI is an abbreviation for National Council of Compensation Insurance. (Doc. 21-1 at 2.)

> section of the policy, so therefore we included them in all other seamen since they fall within that category of – if we're going to pay claims on these three folks, there's a potential to pay claims on the rest of them, they create an exposure under our policy, so we included them within the audit and charged premium.

(Doc. 21-1 at 5 (citing LM Insurance Appendix [Doc. 21-3] at 8 ll. 9-18).)

LM seeks to support its position with cases arising out of disputes over premiums charged for independent contractors. *See e.g., Compassionate Care, Inc. v. Travelers Indem. Co.*, 83 A.3d 647, 663 (Conn. App. Ct. 2013) (defendant may charge a premium based on its risk exposure regardless of whether disputed individuals are classified as employees or independent contractors); *Nat'l Fire Ins. Co. of Hartford v. Beaulieu Co.*, 59 A.3d 393, 399 (Conn. App. Ct. 2013) (independent contractors all fit within Part Five C2 because they engaged in work that could make the plaintiff liable to provide workers' compensation benefits); *Louisiana Workers' Comp. Corp. v. N/C Materials, Inc.*, 858 So. 2d 534, 536 (whether truck drivers were employees or independent contractors was immaterial within the context of the legal issue in this case).

LM does not cite any case outside the independent contractor context where Section C2 was applied. LM argues, "Nothing in the insurance policy limits section C2 to subcontractors and independent contractors." (Doc. 25 at 2.) The language of the last two sentences of Section C2, however, seems to show that the drafters had the issue of independent contractors in mind. The second to last sentence refers to the "contract price for their services." The last sentence refers to the employer of "these persons" as though it means someone other than the insured employer. Although LM may be right that Section C2 does not expressly limit its application to subcontractor or independent contractors, the language and the cases discussing it explain the risk it was designed to address. C1 includes all employees engaged in work covered by the policy. C2 includes

11

"*all other persons* engaged in work that could make [the insurer] liable. (Doc. 21-3 at 27 (Policy, Pt. Five ¶ C2) (emphasis added).)

In *Beaulieu* the court held that the employer could be held liable for non-employees (uninsured subcontractors) under certain circumstances applicable to the Connecticut workers' compensation statute.[3] 59 A.3d at 401. In *N/C Materials*, the employer could be held liable for premiums for certain non-employees under an endorsement to the policy that provided:

> The [insured] shall include in the gross payroll for the reporting period all payments made to contractors performing any work for the [insured] which is a part or process of the trade or business of the [insured] and shall pay premium thereon calculated at the rate or rates named in the policy and any later endorsements, with the exception that *the [insured] shall not be required to report as payroll any payments made to contractors who have furnished to the [insured] certificates of insurance showing workers compensation insurance coverage* for the contractor's Louisiana employees during the reporting period.

858 So. 2d at 536 (emphasis and brackets in original). In both cases, the issue at bar was the payment of premiums for *non-employees* for whom the insurer could be liable to pay benefits. Neither case involved *employees* who were expressly excluded by the policy language and whose coverage was prohibited by the state workers' compensation statute.

---

[3] The statute provides:
> When any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade or business of such principal employer, and is performed in, on or about premises under his control, such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor.

Conn. Gen. Stat. § 31-291; *Beaulieu,* 59 A.3d at 401. There does not appear to be an analogous Iowa statute that could make an Iowa employer liable for its non-employees.

12

The case at bar is distinguishable from the cases LM cites not merely because it involves undisputed employees rather than independent contractors, but because the status of the employees for whom LM paid claims changed during the policy period. It appears LM may have paid these claims (or at least LM could be made liable for these claims) because the classification of these three individuals may have changed during the course of their employment. While the parties' statements of facts and the briefs do not address the issue, the correspondence between the parties in LM's Appendix at Doc. 22-2, does. According to the correspondence, LM continued to take the position that the three claims should be "handled as Jones Act seamen claims under the insured's P&I [policy]." (Doc. 22-2 at 7.) Newt Marine's General Manager Marcus Murphy responded with a discussion of the applicability of the Jones Act and workers' compensation coverage. (*Id.* at 3-5.) In pertinent part, Mr. Murphy asserted:

> We believe, further, that case law allows an employee to be re-assigned at any time and coverage, whether Workers' Compensation or Jones Act, depends on the employee's assigned task at the time of injury. Please see below some case law in this area. . . . Again, as mandated by the Supreme Court in case law, they have made it clear that the correct approach is to examine the employee's basic job assignment as it existed at the time of an injury. *The basic job assignments of Mr. Abitz and Mr. Jackson were changed away from seaman duties at the time of their injuries.*

(*Id.* at 4-5) (emphasis added). The Court sees no reason to disagree with Newt Marine's position that coverage is determined at the time of an injury and LM asserts none. Despite how an employee may have been classified to obtain insurance, whether an employee is excluded as a seaman depends on the employee's actual job assignment at the time of injury.

Similarly, whether the employer owes a premium depends on the employee's actual classification during the policy period. The audit procedures to determine the final

premium based on actual classification contemplate this process. The audit procedure allows LM to investigate and address the problem it is complaining about. In other words, by auditing its insured, LM can determine if the premium matches the actual risk it assumed. LM cites *American Zurich Ins. Co. v. MVT Servs. Inc.* for the proposition that "[i]n a retrospective premium audit, the issue is not whether the worker would have certainly been covered had he filed a claim on the insurance policy; rather, the audit is an after-the-fact analysis designed to examine the actual risk which [the insurance company] undertook during the policy period." M2011-0266-COA-R3-CV, 2012 WL 3064650, at *12 (Tenn. Ct. App. Jul. 27, 2012) (bracketed information in original).

LM asserts, "Based on Dubuque Barge's own original position, LM Insurance would have to include all seamen in its risk assessment coverage because each could be covered by the Workers' Compensation policy depending on what task the employee was doing at the time of injury." (Doc. 22 at 3.) This overstates the actual risk LM was exposed to. The policy provides for the determination of the final premium after the policy ends "by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." (Doc. 21-3 at 28 (Policy, Pt. Five ¶ E).) LM has audit rights under the policies that allow it to examine and audit all records including "ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data." (*See e.g.*, *Id.* ¶ G; Doc. 20-4 at 38 (Policy, Pt. Five ¶ G).) Presumably this is the type of information LM obtained or could have obtained to create the audit reports shown in pages 146-191 of Newt Marine's Appendix. (Doc. 20-4 at 146-91.) More to the point, this is the type information that would permit LM to ascertain if Newt Marine's employees—including seamen—were placed in the "proper classifications" to determine the final premium. (*Id.* at 38 (Policy, Pt. Five ¶ E).)

Requiring Newt Marine to pay premiums for workers who were properly classified as seamen but *who might have been reassigned* to covered classifications does not match the "actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and the work covered by this policy." (Doc. 21-3 at 28 (Policy, Pt. Five ¶ E).) The mere possibility that Newt Marine might reassign workers does not increase LM's actual "premium basis" any more than the possibility that LM might hire additional covered employees. If Newt Marine hired more covered employees during a policy period that were not part of the estimated premium, those new workers would nevertheless be covered and the premium reflected in the "premium basis;" i.e., the "payroll and all other remuneration paid or payable during the policy period for the services of" Newt Marine's employees. (*See e.g.*, Doc. 20-4 at 117 (Policy, Pt. Five ¶ C).) Similarly, Newt Marine might reassign clerical workers to be carpenters during a policy period. Because of the higher rate for carpenters, (*see id*. at 97) such a change would be included in the final premium basis and reflect the actual risk assumed with respect to the workers' proper classifications.

Neither party claims Section C2 is ambiguous or even asserts there is any difficulty in interpreting this policy language. "Insurance policies are contracts between the insurer and the insured and must be interpreted like other contracts, the object being to ascertain the intent of the parties." *Talen v. Employers Mut. Cas. Co.,* 703 N.W.2d 395, 407 (Iowa 2005) (citing *Ferguson v. Allied Mut. Ins. Co.,* 512 N.W.2d 296, 299 (Iowa 1994)). "Generally, contracts are interpreted based on the language contained within the four corners of the document." *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 615 (Iowa 2006) (citing *Smidt v. Porter*, 695 N.W.2d 9, 21 (Iowa 2005)). When a contract's terms are unambiguous and their meanings plain, the court need not engage in contract interpretation or construction. *See Allen v. Highway Equip. Co.*, 239 N.W.2d 135, 139 (Iowa 1976). Rather, "[i]t is a

fundamental and well-settled rule that when a contract is not ambiguous, [the court] must simply interpret it as written." *Smidt*, 695 N.W.2d at 21 (citing *State Pub. Def. v. Iowa Dist. Ct.*, 594 N.W.2d 34, 37 (Iowa 1999); *Rogers v. Maryland Cas. Co.,* 109 N.W.2d 435, 437 (Iowa 1961)). No reasonable interpretation of Section C2 would require payment of additional premiums because the insurer "could be held liable" *if* the express policy language excluding seamen is not enforced and *if* Iowa Code Section 85.1(6) is ignored.

Based on the foregoing, the Court concludes that LM is not entitled to recover from Newt Marine the additional premiums it seeks for all of its seamen under Section C2 on the grounds they were "persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy."

LM's Complaint states a claim solely for unpaid premiums. As stated above, it does not seek to recover amounts it may have paid for claims or otherwise state a claim for damages. In support of its motion for summary judgment, LM appears to have recalculated Newt Marine's final premium by including all formerly excluded seamen in each of the three policy years. For the reasons set forth above, the Court concludes that LM is not entitled to recover on the broad claim that all of Newt Marine's seamen should have been included in the premium calculation.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff's Motion for Summary Judgment **(Doc. 21)** is **DENIED**.
2. Defendant's Motion for Summary Judgment **(Doc. 20)** is **GRANTED**.
3. Because this Order disposes of all pending claims, the trial of this case currently scheduled for April 29, 2019 is now canceled.
4. The Clerk shall enter judgment in accordance with this Order.

**IT IS SO ORDERED** this 8th day of March, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa